UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
F I L E D
MAR – 9 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA
```

STEPHANIE R. HOLMES,          )
                              )
        Plaintiff,            )
                              )
    v.                        )        Case No. 1:10-cv-00075 (TSE/IDD)
                              )
WAL-MART STORES, L.P.         )
                              )
        Defendant.            )
                              )

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's, Wal-Mart Stores, L.P. ("Defendant"),

Motion to Strike Plaintiff's Claim for Compensatory Damages as Sanction for Ms. Holmes'

Fraud on the Court (Dkt. No. 24), Motion to Dismiss as Sanction for Ms. Holmes' Fraud on the

Court (Dkt. No. 27), Motion to Dismiss Plaintiff's Claims for Lost Wages and Reinstatement

(Dkt. No. 47), and Motion for Partial Summary Judgment on Plaintiff's Claims for Lost Wages

and Reinstatement (Dkt. No. 48).  After reviewing all the motions, memoranda in support, and

responses thereto, and conducting an evidentiary hearing on the matter, the undersigned

Magistrate Judge recommends that the Defendant's Motion to Strike Plaintiff's Claims for

Compensatory Damages as a Sanction for Fraud (Dkt. No. 24) be **GRANTED**.  Further, the

Defendant's Motion to Dismiss as a Sanction for Ms. Holmes Fraud on the Court should be

**GRANTED in part and DENIED in part**.  The motion should be **GRANTED** as it relates to

her claims for compensatory damages for emotional pain and suffering; and it should be

**DENIED** as to its request for dismissal of the Complaint in its entirety.  Finally, Defendant's

Motion to Dismiss, or in the Alternative for Partial Summary Judgment, on Plaintiff's Claims for

Lost Wages and Reinstatement (Dkt. Nos. 47, 48) should be **DENIED**.

## I. **INTRODUCTION**

This case arises under Title 1 of the Americans with Disabilities Act of 1990 ("ADA"),
and Title 1 of the Civil Rights Act of 1991 ("Civil Rights Act"). (Compl. ¶ 1.) The Equal
Employment Opportunity Commission ("EEOC") filed a Complaint with this Court on January
27, 2010. (Dkt. No. 1.) The Complaint alleged that the Defendant violated the ADA when it
failed to provide Stephanie Holmes ("Plaintiff" or "Ms. Holmes"), the charging party, with a
reasonable accommodation for her known disability, deafness, during her employment as a
stocker with the Defendant from November 2002 to December 2006. (Compl. ¶ 8.) In its prayer
for relief, the EEOC requested, among other things, compensatory damages for Ms. Holmes for
pecuniary losses, and non-pecuniary losses resulting from alleged unlawful employment
practices, including emotional pain and suffering (Compl. ¶ D.)

On May 17, 2010, the Defendant served its First Set of Interrogatories ("Interrogatories"),
First Request for Production of Documents ("Documents Requests"), and First Request for
Admissions ("Admissions Requests")(hereinafter, collectively "Discovery Requests") on
Plaintiff, through the EEOC. (Def.'s Mem. Supp. Mot. Strike 3.) Through these Discovery
Requests, Defendant sought information, documents, and/or admissions about Ms. Holmes's
medical history and any communications by or to Ms. Holmes concerning the issues raised in the
Complaint, including the prayer for compensatory damages. (Def.'s Mem. Supp. Mot. Strike at
3, 4.) Specifically, Defendant sought information about Ms. Holmes's medical history, including
treatment for mental or emotional illness and the identities of physicians, therapists, or
psychologists who provided such treatment. (Def.'s Mem. Supp. Mot. Strike at 3.) In its

2

Documents Request, Defendant asked for, among other things, the production of: (1) any documents or communications that Plaintiff sent to or received from any current or former Wal-Mart employees, (2) any diaries or journals authored by Plaintiff that contained information relating to issues raised in the Complaint, (3) any e-mails authored by, sent to, or stored in Plaintiff's e-mail accounts that concerned issues raised in the Complaint; and (4) documents related to any jobs held by Plaintiff since January 2006, including any employer policies. (Dkt. No. 28, Exh. 2.)

In June 2010, the EEOC served its responses to Defendant's Discovery Requests and generally objected to those requests concerning Plaintiff's medical history. (Evidentiary Hr'g Pl.'s Exhs. 4-9.) As a basis for its objections, the EEOC claimed that such requests were not relevant as the agency had not placed Plaintiff's medical history at issue. (Evidentiary Hr'g Pl.'s Exh. 8 at 8.) Plaintiff admitted that she at no time visited a psychiatrist, psychologist or any other health care provider in connection with the issues raised in the Complaint. (Evidentiary Hr'g Pl.'s Exh. 7 at 3.) In response to the request for diaries or journals authored by Ms. Holmes and any communications related to her employment at Wal-Mart, the EEOC noted, in conjunction with its objections, that it would produce all of the responsive, non-privileged documents in its possession. (Evidentiary Hr'g Pl.'s Exh. 9 at 2.)

On June 29, 2010, the Defendant deposed the Plaintiff. (Def.'s Mem. Supp. Mot. Strike at 1.) During this deposition, in response to defense counsel's questioning, Plaintiff stated that she treated with a physician for depression and anxiety on several occasions over the course of a 13 year period of time. (Evidentiary Hr'g Def.'s Exh. 4 at 74:13-76:13, 80:1-92:22.)

On July 9, 2010, Defendant filed a Motion to Strike the EEOC's claim for compensatory

3

damages as a sanction for Ms. Holmes's fraud. (Dkt. No. 24.) Defendant asked the Court to

dismiss Plaintiff's claims for damages for emotional pain and suffering as a sanction for Plaintiff

providing false information in response to Defendant's Discovery Requests for her medical

history, as illustrated by her deposition responses. (Def.'s Mem. Supp. Mot. Strike at 2.)

Defendant noticed a hearing for argument on the motion for July 23, 2010. (Dkt. No. 26.)

On July 14, 2010, defense counsel continued its deposition of Plaintiff. (Dkt. No. 28,

Def.'s Mem. Supp. Mot. To Dismiss 3.) During this session, Plaintiff stated that while she

worked for the Defendant, one of its employees, a store manager, told her that she was unable to

do anything because she was deaf. (Evidentiary Hr'g Def.'s Exh. 4, at 28:22-29:1-3.) Plaintiff

stated that the store manager also wrote this statement on a piece of paper, which she saved in a

shoe box along with other "back and forth" written communications with the store manager and

assistant manager, and a highlighted Wal-Mart employee handbook. (Evidentiary Hr'g Def.'s

Exh. 4 at 255:20-256:14.) Following the conclusion of this deposition session, Defendant filed a

motion to dismiss the EEOC's case as a sanction for Plaintiff's fraud on the Court. (Dkt. No.

27.) In its motion papers, the Defendant again alleged that Plaintiff's responses in her deposition

demonstrated that in addition to the misrepresentation about her mental health treatment, Plaintiff

also willfully withheld documents responsive to Defendant's discovery requests. (Dkt. No. 28,

Def.'s Mem. Supp. Mot. Dismiss at 2.) The Defendant filed a notice for a hearing on this motion

for July 30, 2010. (Dkt. No. 33.)

Prior to the hearing on Defendant's motions, on July 23, 2010, with the Defendant's

permission, the EEOC filed a Consent Motion to Dismiss the Agency as the named plaintiff in

this case. (Dkt. No. 35.) This Court granted the motion and ordered that Plaintiff would have

4

thirty days from the date of the EEOC's dismissal to file a motion to intervene as plaintiff in the case. (Dkt. No. 36).  On August 24, 2010, Plaintiff filed a motion to intervene as plaintiff in this action with an attached proposed Complaint that included in its prayer for damages a request for lost wages and reinstatement. (Dkt. No. 39, Exh. 1 ¶ D.)  In response, Defendant filed a notice of non-opposition to Plaintiff's motion. (Dkt. No. 42.)  On the same date, the Court granted Plaintiff's motion. (Dkt. No. 43.)  Subsequently, Defendant filed a Motion to Dismiss the Plaintiff's Complaint as to her claims for lost wages and reinstatement, or in the alternative, for partial summary judgment as to those claims. (Dkt. Nos. 47, 48.)  Defendant argued that because the Plaintiff voluntarily resigned from her position she was not entitled to back wages and reinstatement. (Dkt. No. 49, Def.'s Mem. Supp. Mot. Dismiss at 4-6.)  Furthermore, Defendant asserted that allowing the Plaintiff to intervene into the litigation at such a late date and to asset claims not asserted in the original Complaint would unduly prejudice the Defendant. (*Id.* at 6, 7.)

On October 8, 2010, the Honorable T.S. Ellis, III, United States District Judge for the Eastern District of Virginia, ordered that an evidentiary hearing be conducted by the undersigned Magistrate Judge on Defendant's Motion to Strike (Dkt. No. 24), Motion to Dismiss (Dkt. No. 27), and Motion to Dismiss Plaintiff's Claim for Lost Wages and Reinstatement, or in the Alternative, for Partial Summary Judgment (Dkt. Nos. 47, 48). (Dkt. No. 63.)

On November 17, 2010, this Court held an evidentiary hearing on Defendant's motions. (Dkt. No. 67.)  The hearing continued for two more days on December 2, 2010, and December 17, 2010, at which time both sides presented evidence on the issues revolving around Ms. Holmes's responses to Defendant's discovery requests, her deposition testimony, and her conduct following her deposition as well as her communications with counsel for the EEOC. (Dkt. Nos.

67, 68, 72.) Upon the conclusion of the hearing, this Court ordered the parties to submit supplemental briefing highlighting the portions of the evidentiary hearing transcript that supported their positions by close of business on January 13, 2011. After the parties submitted their supplemental briefing, this Court took the motions under advisement to issue this report and recommendation.

## I.  FINDINGS OF FACT

As the trier of fact, this Court must consider all of the evidence relating to Defendant's motions to determine whether it has met its burden of proof to establish that Plaintiff has committed a fraud on the Court. In doing so, this Court has the discretion to determine the credibility of the witnesses and to weigh their testimony, and the reasonable inferences drawn therefrom. *Morrison v. Nissan Motor, Co.*, 601 F.2d 139, 141 (4th Cir. 1979)(explaining that issues of witness credibility are best determined by the trier of facts who has observed the demeanor of the witnesses during direct and cross-examination).

Upon review of the evidentiary hearing testimony, the parties' hearing exhibits and the pleadings submitted by the parties in connection with the motions before this Court, the undersigned Magistrate Judge makes the following findings of fact.

### A.     *Plaintiff's Responses to Defendant's Discovery Requests For Answers and Documents Relating to Plaintiff's Mental Health Treatment History*

This Court finds that the Plaintiff falsely answered Defendant's Admissions Request when she admitted that she had not undergone treatment by a psychiatrist or psychologist in connection with any of the issues raised in the Complaint. Plaintiff testified on direct-examination that she did not answer the Admissions Request falsely because while she did treat

6

with a therapist during her employment at Wal-Mart, her therapy was related to personal issues rather than the issues raised in the Complaint. (Hr'g Tr. 51: 3-9, Dec. 2, 2010.) However, Plaintiff, during that same direct-examination and only a few moments later, stated that she sought treatment during her employment at Wal-Mart for both personal and work related issues. (*Id.* at 51: 25-52: 1-15.) Plaintiff's testimony is also inconsistent with representations made by the Plaintiff in her Memorandum in Opposition to Defendant's Motions to Dismiss where she stated that she told the EEOC investigator that she treated with a therapist because of, among other things, what happened to her while working at Wal-Mart. (Pl.'s Mem. Opp. Def.'s Mot. Dismiss and Mot. Strike at 2.)

To explain the inconsistencies between her Admissions Request response and her deposition testimony, Plaintiff asserts that the EEOC attorneys never reviewed the Defendant's Discovery Requests with her. (*Id.* at 4; Hr'g Tr. 116:13-117:23, Dec. 2, 2010.) However, in her deposition testimony, Plaintiff testified that she received and read a copy of Defendant's Documents Requests. (Evidentiary Hr'g Def.'s Exh. 4 at 260:15-21.) On direct-examination, Plaintiff also testified that Edward Loughlin ("Mr. Loughlin"), EEOC staff attorney, told her to bring her medical documents to a deposition preparation meeting with him. (Hr'g Tr. 77:16-23, Dec. 2, 2010.) Plaintiff repeated this testimony on cross-examination when she stated that she discussed the Discovery Requests with the EEOC attorney through video phone and e-mail, and she also confirmed receipt of the Discovery Requests. (Hr'g Tr. 10:20-11:6, Dec. 17, 2010.)

Plaintiff's testimony that she received the Discovery Requests is further supported by the testimony of Mr. Loughlin. Mr. Loughlin testified that he mailed Ms. Holmes a copy of Defendant's Discovery Requests and relied on conversations he had with her about them when

7

preparing his responses. (Hr'g Tr. 19:11-20:7, Nov. 17, 2010.) Specifically, Mr. Loughlin

testified that, with the exception of Discovery Requests concerning claims for back pay, he

reviewed all of the Discovery Requests with Plaintiff and confirmed the accuracy of the final

responses with her. (*Id.* at 19:11-21:9.) His testimony is consistent with the testimony that

Plaintiff offered at her deposition where she stated that she spent approximately up to two hours

communicating with the EEOC about the Discovery Requests. (Evidentiary Hr'g Def.'s Exh. 4

at 272:7-17.)

In an attempt to discredit Mr. Loughlin, the Plaintiff implies that Mr. Loughlin gave

inconsistent testimony about when he first learned of Plaintiff's mental health treatment. (Pl.'s

Post Hr'g Brief at 7.) In that regard, Mr. Loughlin testified that he first learned of Plaintiff's

history of mental health treatment at her deposition. (Hr'g Tr. at 22:7- 23:3, Nov. 17, 2010.)

Plaintiff wants this Court to believe that this statement is inconsistent with Mr. Loughlin's

testimony that three notes from Family Foundation Services ("FSF"), the place where Plaintiff

received much of her mental health treatment, were included in the EEOC's investigative file.

(Pl.'s Post Hr'g Brief at 7.) The Court, however, finds no inconsistency between these two

statements because Mr. Loughlin testified that he overlooked these notes when he prepared his

responses to the Discovery Requests. (Hr'g Tr. at 86:8-20, Nov. 17, 2010.) Mr. Loughlin also

testified that the notes do not indicate the exact nature of the therapy that Plaintiff received at

FSF.[1] (*Id.* at 41:12-42:9.) Having observed Mr. Loughlin throughout his entire testimony, this

Court finds Mr. Loughlin's testimony credible, and therefore also finds that Plaintiff did not

disclose any treatment history to him prior to her June deposition.

---

[1] After reviewing the notes, which were signed by an "LCPC," the Court finds that they state that Plaintiff had a
standing appointment for therapy once a week at FSF. (Evidentiary Hr'g Pl.'s Exh. 11.)

Tracey Spicer ("Ms. Spicer"), Mr. Loughlin's supervising trial attorney, also testified that she overlooked the FSF notes during her review of the EEOC investigative file. (Hr'g Tr. 85:18-87:6-10, Dec. 17, 2010.) She explains that the notes were in the portion of the EEOC investigative file that contained Plaintiff's W-2 forms. (*Id.*) Ms. Spicer stated that she did not review that section of the file because the EEOC was not seeking back pay for the Plaintiff. (*Id.* at 87:10.) Based on this testimony, an argument could made that the EEOC should have been aware of the fact that Plaintiff attended FSF for therapy of some kind and that perhaps they should have inquired further with Plaintiff as to the nature of that therapy. However, this evidence does not support Plaintiff's position that she disclosed her mental health treatment history to Mr. Loughlin in preparation of the EEOC's responses to the Discovery Requests.

The record also does not support Plaintiff's assertion that she discussed her mental health treatment history with the EEOC intake specialist or investigator. (Pl.'s Mem. Opp. Def.'s Mot. Dismiss 2.) The EEOC investigative support specialist/intake officer, Eugene Reed ("Mr. Reed"), testified that he did not recall his meeting with Plaintiff, or talking to her about her mental health treatment. (Hr'g Tr. 127:20-24, 130:10-13, Nov. 17, 2010.) The EEOC investigator, Yofi Weinberg, testified the same saying that she never asked Plaintiff whether she sought medical treatment in connection with her employment at Wal-Mart and that Plaintiff never disclosed any such treatment to her. (*Id.* at 137:2-19, 142:8-11.) She further stated that she first learned of Plaintiff's treatment at FSF when a few weeks before the evidentiary hearing, Mr. Loughlin showed her the notes contained in the investigative file. (*Id.* at 137:2-19.) Other than the FSF notes, which Defendant could have provided to the EEOC during its investigation of Plaintiff's charge, there is no support for Plaintiff's testimony that she gave Ms. Weinberg the

9

contact information for FSF or that she told Mr. Reed or Ms. Weinberg that she was depressed. (Hr'g Tr. 66:2-67:8, Dec. 2, 2010.)

Accordingly, the evidence presented at the evidentiary hearing supports the Defendant's position that Plaintiff made misrepresentations to the EEOC regarding her history of mental health treatment. That conclusion is further supported by the fact that during the deposition, Plaintiff initially gave elusive and hostile responses to defense counsel's questions regarding mental health treatment. (Evidentiary Hr'g Def.'s Exh. 4 at 71:9- 73:4.) For instance, Plaintiff stated, "I don't need therapy, and I don't see doctors." (*Id.* at 71:19-20.) She also said "you think [defense counsel] I need to go to a doctor because I look like a crazy person . . . I don't appreciate this question about asking if I had seen therapy . . . but I would appreciate that that line of questioning not continue, thank you." (*Id.* 71:22,72:19-20, 73:3-4.)

These responses show that initially Plaintiff did not want to disclose any information regarding her mental health treatment to Defendant. Thus, the logical inference drawn from her responses is that when asked by Mr. Loughlin to provide answers to the Discovery Requests, Plaintiff denied seeking any such treatment. Based on the evidence presented at the evidentiary hearing, this Court finds that Plaintiff's testimony is not credible as it relates to her claim that the EEOC did not communicate with her in preparing responses to the Discovery Requests or her claim that she told the EEOC about her mental health treatment history.

In addition, there are a number of inconsistencies in the record[2] about the extent and duration of Plaintiff's mental health treatment. For instance, during her deposition, Plaintiff only disclosed that over the span of thirteen years, she intermittently treated with a mental health

---

[2] By record, the Court is referring to all the testimony provided at the evidentiary hearing as well as Ms. Holmes's deposition testimony included in Defendant's Hearing Exhibit number four (4).

professional at FSF, Dr. Ethan Hunt ("Dr. Hunt").  (Evidentiary Hr'g Def.'s Exh. 4 at 75:3-111:9.)  But during direct-examination at the evidentiary hearing, Plaintiff stated that she has treated with ten to fifteen therapists and has sought care at a psychiatric hospital on two occasions. (Hr'g Tr. 46:6-10, Dec. 17, 2010.)  Plaintiff's explanation for her inconsistent answers about her mental health treatment has generally been that she does not remember. (*See* Evidentiary Hr'g Def.'s Exh. 4 at 75:3-106:3; Hr'g Tr. 52:19.)  While the Court can appreciate that it would be difficult for Plaintiff to recall every detail concerning her mental health treatment history, it finds it implausible that she could remember treating with only one of ten to fifteen therapists.  Therefore, the Court further finds that the Plaintiff purposefully made misrepresentations about her mental health history at her deposition.  Furthermore, this Court finds that Plaintiff intentionally withheld material information about her mental health treatment history from the Mr. Loughlin when working with him to provide responses to the Discovery Requests.

Upon consideration of all of the above mentioned testimony, Defendant has by clear and convincing evidence shown that Plaintiff intentionally provided false answers to Defendant's Discovery Requests regarding her mental health treatment history as it relates to her claims for damages for emotional pain and suffering.  It is evident to the Court that Plaintiff willfully and knowingly withheld information that Defendant requested, and that she knew she had an obligation to provide.

**B.**   ***Plaintiff's Responses to Defendant's Discovery Requests Regarding All Communications By and To Plaintiff in Connection with Her Employment at Wal-Mart and Any Diary or Journal Authored by Plaintiff Relating to Issues Raised in the Complaint.***

   ***i.*    *Journal and Diary***

11

This Court finds that Plaintiff falsely answered Defendant's Discovery Requests for production of any journal or diary authored by Plaintiff containing information related to her claims. When answering Document Request number four, the EEOC stated that subject to its objections, it would produce all non-privileged documents within its possession that were responsive to Defendant's request. (Evidentiary Hr'g Pl.'s Exh. 9.) As has already been discussed, this Court finds credible Mr. Loughlin's testimony that he consulted with Plaintiff before providing an answer to this request, and that she never disclosed or produced to him a journal or diary. This Court also finds credible Mr. Loughlin's testimony that the first time he heard about Plaintiff writing about her experiences at Wal-Mart in a diary or journal was during her deposition. (Hr'g Tr. 23:24-24:1-3, 25:9-12, Nov. 17, 2010.) Furthermore, this Court also finds credible the testimony of Ms. Weinberg who also testified that Plaintiff never produced a diary or journal to her. (*See Id.* at 142:6-7)(testifying that she did not withhold any information that she received from Plaintiff from the EEOC attorneys).

Plaintiff would have this Court believe that Mr. Loughlin's and Ms. Weinberg's testimony is untrue. However, Plaintiff's testimony about an alleged diary and journal has been inconsistent and illogical. On direct-examination during the evidentiary hearing, Plaintiff testified that she discussed the journal and diary with Mr. Loughlin prior to her deposition. (Hr'g Tr. 173:5, 173:15-174:18, Dec. 2, 2010.) She testified further that she received a letter from Mr. Loughlin that specifically asked her to bring her journal and diary to a meeting with him. (*Id.* at 79:9-23.) But then Plaintiff testified that neither a journal nor diary were included in the list of items that she was supposed to bring to her meeting with Mr. Loughlin. (*Id.* at 83:17-24). She further testified that since her diary and journal were her personal things, she decided not to bring

12

them to the meeting. (*Id.*) This latter testimony is consistent with her statements at her deposition that she alone decided not to produce the journal or diary to the EEOC because they were private. (Evidentiary Hr'g Def.'s Exh. 4 at 277:1-7, 278:6-15.) Therefore, it is inconsistent with her direct-examination testimony that Mr. Loughlin advised her to bring any journals and/or diaries to her meeting with him. Said testimony is also inconsistent with her evidentiary hearing cross-examination testimony. Specifically, on cross-examination, Plaintiff testified that Mr. Loughlin told her not to produce the journal and diary because they would hurt the case. (Hr'g Tr. 16-22, 18:12, Dec. 17, 2010.)

The inconsistencies between her deposition testimony and her evidentiary hearing direct and cross-examination testimony make it extremely difficult to conclude that Plaintiff told the EEOC about the diary and journal prior to her deposition. Furthermore, it would be illogical for Mr. Loughlin to tell Plaintiff to bring the dairy and journal to the meeting and discuss them with her, but then tell her not to produce them because they would hurt the case. This is especially true when he would have been unaware of the contents of any journal or diary at the time he allegedly told Plaintiff not to produce them. Therefore, this Court finds that Plaintiff never told the EEOC staff about her journal or diary.

Defendant posits that since Plaintiff testified in the deposition that she writes in her journal everyday (Evidentiary Hr'g Def.'s Exh. 4 at 278:3-6), but has yet to produce it, then she is withholding evidence in this case. Plaintiff's mother, Brenda Wharton ("Ms. Wharton"), testified that after the July 14, 2010 deposition, she helped Plaintiff look for the journal and diary, but never found it. (Hr'g Tr. 19:18-21, 36:10-12 (stating that Ms. Wharton never saw the diary after they moved in September 2006.)) The Court finds Ms.'s Wharton's testimony to be

13

credible.  Although Plaintiff testified during her deposition that the journal was in a box in her

room (Evidentiary Hr'g Def.'s Exh. 4 at 274:21-22), she testified on cross examination that she

last saw the journal in question before her meeting with Mr. Loughlin and that she can no longer

find the journal or diary.  (Hr'g Tr. 20-23, 29:13-15, Dec. 17, 2010.)  She further testified that the

journal she wrote in the day before the deposition was not the journal she wrote in while working

at Wal-Mart.  (*See Id.* at 25:4-11.)

        Once she testified about the existence of the journal and diary, it would have been in

Plaintiff's best interest to produce them immediately.  Therefore, Plaintiff's testimony that she

cannot now locate the diary or journal may be true.  However, Plaintiff's deposition and

evidentiary hearing testimony reveal that she had, or thought she had, a journal and diary at the

time that she answered Defendant's production request.  She further stated in her deposition and

on cross-examination that she alone made the decision not to produce them because they were

her private things.  In that regard, the evidence clearly and convincingly establishes that she

falsely answered the request when she failed to produce the journal or diary to the EEOC or to

the Defendant.

### ii.    *Communications with Wal-Mart Employees*

        This Court also finds that Plaintiff made misrepresentations to Defendant when she

answered the Discovery Requests regarding communications with Defendant's employees.

During her deposition, Plaintiff testified that she maintained written communications that she had

with management at Defendant's store along with a highlighted copy of a Wal-Mart employee

handbook in a shoebox.  (Evidentiary Hr'g Def.'s Exh. 4 at 256: 9, 263:4-19.)  She also testified

that she never produced those documents.  (*Id.* at 263:20-265:7.)  Once again, Plaintiff has

14

provided inconsistent testimony concerning the production of relevant discovery. Plaintiff first stated in her deposition that she had the aforementioned communications (*Id.* at 263:16-19), and then at the evidentiary hearing she stated she gave the handbook to Mr. Loughlin (Hr'g Tr. 45: 18-46:2, Dec. 17, 2010.) In subsequent testimony at the evidentiary hearing she said that she lost the shoebox after she moved to Baltimore. (*Id.* at 44:17-45:1-11.)

Given these inconsistent statements, the Court finds that the only thing that Defendant has clearly established is that Plaintiff had, or thought she had, the aforementioned communications when she answered the request and decided not to produce them to the EEOC or Defendant. Plaintiff offers little explanation as to why she did not produce them. She says in her deposition testimony that she thought that she gave everything to the EEOC investigator. (Evidentiary Hr'g Def. Exh. 4 at 269:5-17.) Again, the Court finds credible Mr. Loughlin's and Ms. Weinberg's testimony that they produced what Plaintiff produced to them that was responsive to this request. Therefore, this Court finds that Plaintiff made misrepresentations about communications with Wal-Mart employees and policies within her possession when responding to the Discovery Requests. The evidence does not clearly demonstrate, however, that Plaintiff is currently withholding these communications. Thus, this Court finds that Plaintiff is no longer in possession of said documents.

### iii.     E-mails Concerning Employment with Wal-Mart

This Court finds that the same is not true of the approximately one-hundred e-mails that Plaintiff allegedly sent to friends and family regarding her experiences as Defendant's employee. In that regard, Plaintiff clearly understood that she had an obligation to produce the e-mails to the Defendant as they were relevant to her claims, but she testified at her deposition that she

made the decision not to produce them. (Evidentiary Hr'g Def.'s Exh. 4 at 293:17, 296:1-297:2.)

However, Plaintiff also has provided inconsistent testimony about the e-mails. First, she testified at the evidentiary hearing that she had them but that the EEOC told her not to produce them. (Hr'g Tr. 153:14-21, Dec. 2, 2010). During the same direct-examination, however, she testified that she looked in her AOL e-mail account but did not find the e-mails and that she also looked in her t-mail account but found that she or the account may have previously deleted some of the messages. (*Id.* at 154:7-155:1-16.) Plaintiff did not state a specific time period in which she deleted the e-mails, but it appears from the subsequent questioning that she deleted them prior to the June deposition. (*See Id.* at 155:2-16.)

Nevertheless, on cross-examination, Plaintiff testified that she still has the e-mails and in fact produced them to both her former and current counsel. (Hr'g Tr. 33:18-21, 37:17-38:23, Dec. 17, 2010.) Mr. Loughlin's testimony refutes this position asserting that prior to the July deposition Plaintiff neither disclosed the existence of any such e-mails nor produced them to him. (Hr'g Tr. 25:17-21, Nov. 17, 2010.)

Plaintiff would like this Court to believe that she did not understand her obligations to comply with the Discovery Requests. Plaintiff highlights an interjection about the significance of the word "request" made by the Court-appointed Sign language interpreter during defense counsel's cross-examination. (Pl.'s Post Hr'g Brief at 20.) The interpreter stated that in Sign language the word "request" literally means something that a person has an option to do or to refuse. (Hr'g Tr. 36:3-11, Dec. 17, 2010.) This notation by the interpreter, however, does little to support Plaintiff's position. On cross-examination, Plaintiff subsequently testified that she understood her obligation to produce the e-mails to the Defendant, and further states that she

16

produced them to her attorney.  (Hr'g Tr. 41:16-18, 40:6-40:11.)  At present, Plaintiff claims that she has given the emails to current counsel, but fails to account for why he has not produced them to the Defendant.

Therefore, this Court finds that Plaintiff's testimony that she disclosed the e-mails to the EEOC and produced them to Mr. Loughlin is not credible.  As such, Defendant has proven by clear and convincing evidence that the Plaintiff made misrepresentations to Defendant when she chose not to produce e-mails responsive to its request.  Plaintiff has wavered between her ability to find the e-mails and her assertion that she, fairly recently, produced them to her current attorney.  Plaintiff has represented to the Court that she still has the e-mails or copies thereof.  Therefore, unless Plaintiff's counsel can produce the e-mails that she allegedly gave him, this Court finds that the Plaintiff is willfully withholding e-mails that are relevant and responsive to the Defendant's Discovery Requests.

In summation, the evidence has shown that Plaintiff knowingly made misrepresentations to Defendant's Discovery Requests concerning: (1) her history of mental health treatment, (2) communications by and to Plaintiff in connection with her employment at Wal-Mart, including communication with Defendant's employees and e-mails to others concerning her employment with Wal-Mart, (3) Defendant's policies in her possession, and (4) her possession of a diary or journal relating to the issues raised in the Complaint.  In the instance of her mental health treatment and the journal and diary, the Court finds that such representations were made to hinder Defendant's access to information that Plaintiff believed to be personal, despite the fact that she understood her obligation to produce such information.  This Court further finds that Plaintiff's representations regarding production of e-mails to Mr. Loughlin were also made to

17

hinder Defendant's access to discoverable information.  In addition, unless Plaintiff's current

counsel, Mr. Rau, produces the aforesaid e-mails in response to this Report and

Recommendation, this Court would further find that Plaintiff's representations concerning

producing those e-mails to Mr. Rau and/or her failure to produce the e-mails to the Defendant

were made in bad faith.  For those reasons, this Court finds that, as to those two requests,

Plaintiff acted in bad faith by failing to comply with her obligations to provide truthful

information to Defendant during discovery.

## II.  **DEFENDANT'S MOTION TO STRIKE COMPENSATORY DAMAGES AND MOTION TO DISMISS FOR MS. HOLMES'S FRAUD ON THE COURT**

Where a court finds that a party has acted "in bad faith, vexatiously, [or] wantonly"

during the course of litigation, it has inherent power to impose sanctions on the party that it

deems appropriate. *Chambers v. NASCO*, 501 U.S. 32, 45-46 (1991); *In re Weiss*, 111 F.3d

1159, 1171 (4th Cir. 1997).  This ability to impose sanctions on a party extends to conduct that

occurs outside of the courtroom. *Chambers*, 501 U.S. at 57 ("As long as a party receives an

appropriate hearing . . . the party may be sanctioned for abuses of process occurring beyond the

courtroom . . . ." citing *Young v. United States ex rel. Vuitton*, 481 U.S. 787, 798 (1987)).

Though the court should act with discretion and restraint when employing this authority,

dismissal of a case is a proper remedy when appropriate under the circumstances. *Chambers*,

501 U.S. at 45; *Silvestri v. GMC*, 271, 583, 593 (4th Cir. 2001)(explaining that dismissal may be

appropriate where a party's misconduct denies the opposing party the ability to adequately defend

its case); *United States v. Shaffer Equip., Co.*, 11 F.3d 450, 461-62 (4th Cir. 1993).  When

determining whether to dismiss a case after a finding of fraud, the court must consider the

following factors: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong and to punish the culpable persons while also compensating those harmed; and (6) the public interest. *Schaffer Equip., Co.*, 11 F.3d at 462-63.

A plaintiff commits fraud on the court where he impedes the opposing party's access to information relevant to his claims or to the opposing party's defenses in an unconscionable scheme to intentionally prevent the court from impartially adjudicating his claims. *Aoude v. Mobile Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989); *England v. Doyle*, 281 F.2d 304, 309-10 (9th Cir. 1960). A party requesting that his adversary be sanctioned for committing a fraud on the court must prove his allegation by clear and convincing evidence. *Perez-Perez v. Popular Leasing Rental, Inc.*, 993 F.2d 281, 285 (1st Cir. 1993); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 538 F.2d 180, 195 (8th Cir. 1976). And the evidence must demonstrate that bad faith intent, not misunderstanding or confusion, motivated the plaintiff's actions. *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 538 F.2d at 195 ("A finding of fraud on the court is justified only by the most egregious misconduct. . . ."); *Aoude*, 892 F.2d at 1118 (finding that appellant acted in bad faith to commit a fraud on the court because he knowingly allowed his attorney to file a fabricated agreement with his complaint).

After observing Plaintiff's demeanor in court, and upon consideration of her inconsistent statements and the testimony provided by the other witnesses, this Court finds that the Plaintiff intentionally has made false representations during the course of discovery, at her deposition and also at the evidentiary hearing before the Court relating to claims in her Complaint. Therefore,

19

this Court finds that the Defendant has by clear and convincing evidence shown that Plaintiff has developed a scheme to hinder the Defendant's access to evidence and to intentionally prevent this Court from impartially adjudicating her claims.

However, after applying the factors from *Schaffer*, this Court does not find that dismissal of the entire case is an appropriate sanction for Plaintiff's fraud. Plaintiff is entirely culpable for her lack of candor and honesty when working with Mr. Loughlin to complete her discovery responses and when making misrepresentations under oath. Such misconduct could have led to a miscarriage of justice because Defendant had a right to rely on Plaintiff's statements in preparing its defenses to her claims. If Plaintiff were allowed to proceed on her claims for compensatory damages for emotional pain and suffering, then Defendant would be severely prejudiced because the period for discovery has closed. Furthermore, allowing the Plaintiff to proceed on her claims for compensatory damages under these circumstances would also reward her for dishonest fraudulent conduct. However, this Court has an opportunity to prevent undue prejudice and sanction the Plaintiff without dismissing the entire case.

It has been established that there is a strong public policy in favor of resolving cases on the merits. *Schaffer Equip. Co.* 11F.3d at 462. Furthermore, Plaintiff may be appropriately punished and Defendant justly compensated if the Court dismisses her claims for compensatory damages for emotional pain and suffering. Consequently, this Court recommends the dismissal of Plaintiff's claims for compensatory damages for emotional pain and suffering as an appropriate sanction for Plaintiff's fraud on the Court.

Plaintiff asserts that this Court's decision must be made under Virginia's law regarding spoliation of evidence. (Pl.'s Post Hearing Brief at 26-28). Spoliation occurs where one destroys

20

or materially alters evidence or fails to preserve property for another's use as evidence in a

pending or foreseeable litigation. *Silvestri v. GMC*, 271 F.3d 583, 590 (4th Cir. 2001). Plaintiff

asserts that even had she destroyed evidence, her misconduct came at a time when she was a third

party to the action. (Pl.'s Post Hearing Brief at 26-28). However, federal law concerning

spoliation applies in this Court, unless the spoliation occurred prior to the filing of the federal

lawsuit and the suit is one arising under the court's diversity jurisdiction. *State Farm Fire &*

*Casualty Co. v. Frigidaire*, 146 F.R.D. 160, 162 (9th Cir. 1992)(holding that under the *Erie*

Doctrine, the court had to apply state laws of spoliation in a diversity action where plaintiff

breached a duty to preserve evidence prior to filing in federal court).

Plaintiff's argument fails because this Court's decision in this case turns, not on a finding

that Plaintiff willfully destroyed evidence during the course of litigation, but rather on Plaintiff's

commission of fraud on this Court when she made misrepresentations in response to Defendant's

Discovery Requests, and when she testified under oath.[3]

### III. DEFENDANT'S MOTION TO DISMISS CLAIM FOR LOST WAGES AND REINSTATEMENT

Defendant moves to dismiss Plaintiff's claims for lost wages and reinstatement included

in the Holmes Complaint upon her intervening in this case. (Dkt. No. 47, Def.'s Mot. Dismiss at

2.) Defendant asserts that the time for Plaintiff to assert new claims against the Defendant had

expired when she intervened in the case. (Dkt. No. 48, Def.'s Mem. Supp. Mot. Dismiss at 6-7.)

Furthermore, Defendant asserts that Plaintiff voluntarily resigned from her position at

---

[3] Furthermore, even if this Court found that Plaintiff destroyed evidence during discovery, the case law on which counsel relies provides for sanctions even where the Plaintiff was not a party at the time the evidence was destroyed. *Silvestri v. GMC*, 271 F.3d at 586-590 (holding that a plaintiff in a personal injury case breached his duty to preserve evidence in a foreseeable litigation where, prior to filing suit, he failed to give the defendant manufacturer notice and opportunity to inspect the allegedly defective product).

Defendant's store and is therefore unable to recover damages for lost wages and reinstatement under the ADA. (*Id.* at 4-6.) As a result, Defendant asserts that Plaintiff has not plead facts sufficient to support her claims for lost pay and reinstatement. *Id.*

Defendant's argument that Plaintiff's time to allege new claims against it had expired when she intervened in the case must fail. FRCP 24 provides that "upon timely motion, the court may permit anyone to intervene . . . who has a claim . . . that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Rule further provides that the court must consider whether the intervention will unduly delay or prejudice the defendant. *Id.* at (b)(3). In addition, FRCP 24 requires the intervening party to attach a pleading to its motion to intervene that sets forth the claims for which intervention is sought. *Id.* at (C). The Plaintiff properly filed her motion to intervene and properly attached an amended complaint to her motion. (Dkt. No. 39.)

Defendant had the opportunity to present arguments in opposition to Plaintiff's Motion to Intervene before the Hon. T.S. Ellis. Yet, Defendant instead filed a Notice of Non-Opposition (Dkt. No. 42). Defendant argues that Plaintiff's counsel, in the paper accompanying the motion to intervene, represented that Plaintiff asserted no new claims against the Defendant. (Dkt. No. 49, Def.'s Mem. Supp. Mot. Dismiss at 6, 7.) However, as noted above, Plaintiff followed the proper notice and pleading requirements under FRCP 24 and attached the Proposed Complaint to the motion. (Dkt. No. 39.) Defendant, therefore, had notice and opportunity to present its arguments about unfair prejudice but waived them. This Court will not now allow the Defendant to foreclose the opportunity of Plaintiff to litigate her claims for lost wages and reinstatement on the grounds that to do so in this stage of the litigation would prejudice the Defendant. Still, the

22

issue remains as to whether Plaintiff has plead sufficient facts in her Complaint to support a

finding of relief for lost wages and reinstatement.

In that regard, upon motion by a party, a court may dismiss a complaint or claims where a

party fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To

survive a 12(b)(6) motion to dismiss, a complaint must assert plausible facts that, if accepted as

true, provide a basis on which relief may be granted. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

(2009). A reviewing court must use its judicial experience and common sense to determine

whether the facts stated present a plausible claim for relief. *Aschcroft*, 129 S. Ct. at 1949.

Furthermore, a recitation of the elements of the claims and legal conclusions in a complaint are

insufficient to satisfy the plausibility standard of pleading. *Ashcroft*, 129 S.Ct at 1949 (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Therefore, this Court must dismiss

Plaintiff's claims for lost wages and reinstatement if it finds that the Holmes Complaint failed to

allege sufficient facts to support her claim for relief under the ADA.

Back pay and reinstatement are equitable remedies available to a plaintiff who

successfully demonstrates that an employer has engaged in unlawful discrimination in violation

of the statute. *See* 42 U.S.C. § 12117(a)(providing that remedies available under 42 U.S.C.

2000e-5 are available "to any plaintiff alleging discrimination on the basis of disability in

violation of any provision of this Act . . . concerning employment"); 42 U.S.C. 2000e-5(g)(1)

(stating that a court may order reinstatement with back pay where the party can demonstrate that

the "respondent has intentionally engaged in . . . an unlawful employment practice charged in the

complaint").

Defendant asserts that Plaintiff cannot recover lost wages and reinstatement damages

because she voluntarily resigned from her position at Defendant's store and because she has

failed to plead facts to support a claim for constructive discharge. (Dkt. No. 49, Def.'s Mem.

Supp. Mot. Dismiss. at 6.) Defendant's argument fails for two reasons: (1) the ADA does not

limit remedy of reinstatement and back pay to cases where a plaintiff claims unlawful

termination and (2) the Plaintiff has no obligation to plead facts to support a claim that the

Plaintiff has not made. There is no claim of constructive discharge in the Holmes Complaint.

First, on its face §12117 provides that the remedies of§2000e-5 shall be the remedies for

any person alleging discrimination in violation of any provision of that Act. 42 U.S.C. § 12117.

A defendant violates the Act where it discriminates on the basis of disability by failing to make a

reasonable accommodation, pursuant to the statute, for a disabled but otherwise qualified

employee. 42 U.S.C. § 12112. The language of the act does not limit recovery to discrimination

on the basis of disability in the form of unlawful discharge. Therefore, a plaintiff may seek the

damages available under § 2000e-5(g)(1) for any violation of that Act that she alleges in her

complaint. And, § 2000e-(5)(g)(1) gives the court discretion to award back pay and

reinstatement to a plaintiff alleging violation of the Act. 42 U.S.C. §2000e-5(g)(1).

Fourth Circuit precedent supports this Court's interpretation of § 2000e-(5)(g)(1). In

*Wells v. North Carolina Bd. of Alcoholic Ctr*, 714 F.2d 340, 342 (4th Cir. 1983), *cert. denied*,

464 U.S. 1044 (1944), the Fourth Circuit upheld the lower court's award of back pay where

defendant conceded that it violated Title VII, 42 U.S.C. § 2000e where it denied plaintiff a

promotion on the basis of race. The court reasoned that because the defendant violated the act

"the termination of [his] employment ha[d] no relevance on his entitlement to a back pay award

during the post-employment period. It bears only upon the amount of the award . . . [because] he

24

was under a duty to mitigate his losses." *Id.* at 342. The entitlement to back pay began when

defendant denied plaintiff the promotion on the basis of race. *Id.* Therefore, the claim of back

pay may be sought where Plaintiff alleges in the Holmes Complaint that the Defendant has

discriminated against her in violation of the ADA. *Cline v. Wal-Mart Stores*, 144 F.3d 294, 304

(4th Cir. 1998)(stating that compensatory damages are available under the ADA for pecuniary

losses and upholding the lower court's award of lost wages for defendant's demotion of the

plaintiff in violation of ADA).

Plaintiff has alleged in her Complaint that she was a qualified employee with a known

disability of deafness and that Defendant repeatedly denied her requests for a sign language

interpreter or comprehensive notes to accommodate her in the performance of her job functions

as a stock clerk in Defendant's store. (Dkt. No. 39, Compl. ¶¶ 3-14). Plaintiff seeks, among

other things, lost wages and reinstatement, in connection with Defendant's unlawful employment

practice. (Compl. ¶¶ 16, C.) Therefore, this Court finds that Plaintiff has plead plausible facts

that, if accepted as true, would provide her the relief that she seeks under the law. The fact that

Plaintiff voluntarily resigned from her job is relevant only as to her duty to mitigate damages and

not whether the law provides her the right to seek back pay for injuries suffered when the

Defendant violated the ADA by failing to accommodate her. Consequently, Defendant's Motion

to Dismiss Claims for Lost Wages and Reinstatement (Dkt. No. 47) should be denied.

## IV.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS FOR LOST WAGES AND REINSTATEMENT

As an alternative to its Motion to Dismiss Plaintiff's Claims for Lost Wages and

Reinstatement, Defendant seeks summary judgment as to those claims. A court grants a party's

motion for summary judgment when, viewing all facts in favor of the non-moving party, the court finds no genuine issue of material fact upon which a reasonable jury could find in favor of the nonmoving party. *Aiken v. Policy Management Sys. Corp.*, 13 F.3d 138, 141 (4th Cir. 1993).

As previously discussed, the ADA provides lost wages and reinstatement as a remedy for a plaintiff who brings claims against a defendant for engaging in an unlawful practice under the ADA. In this case, no such determination has been made and there is dispute as to whether Defendant provided Plaintiff with a reasonable accommodation within the purview of the ADA. This Court finds, therefore, that a dispute exits between the parties as to a genuine issue of fact material to Plaintiff's case. Consequently, summary judgment is not appropriate in this case, and Defendant's Motion for Partial Summary Judgment should be denied.

## V. <u>RECOMMENDATION</u>

For the reasons articulated above, the undersigned Magistrate Judge recommends that Defendant's Motion to Strike Plaintiff's Claims for Compensatory Damages As A Sanction for Fraud (Dkt. No. 24) should be **GRANTED**. Further, the Defendant's Motion to Dismiss As A Sanction for Ms. Holmes Fraud on the Court (Dkt. No. 27) should be **GRANTED in part and DENIED in part**. It should be **GRANTED** as it relates to her claims for compensatory damages for emotional pain and suffering; and it should be **DENIED** as to its request for dismissal of the case. Further, Defendant's Motion to Dismiss, or in the Alternative for Partial Summary Judgment, on Plaintiff's Claims for Lost Wages and Reinstatement (Dkt. Nos. 47, 48) should be **DENIED**. Finally, this Court recommends that Plaintiff and or Plaintiff's counsel should be ordered to produce to Defendant the e-mails that Plaintiff authored and sent to various family and friends that she testified she still maintains and has provided to Plaintiff's counsel, Christopher

Rau ("Mr. Rau").  If Mr. Rau or Plaintiff fail to produce such documents, the undersigned

Magistrate Judge recommends that Mr. Rau be ordered to show cause through a pleading filed

with the Court why such documents have not been provided and why Plaintiff should not be

further sanctioned as a result.

## VI.    NOTICE

**By mailing copies of this report and recommendation, the parties are notified as follows.**

**Objections to this report and recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of**

**the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you**

**of this report and recommendation.  A failure to file timely objections to this report and**

**recommendation waives appellate review of the substance of the report and recommendation**

**and waives appellate review of a judgment based on this report and recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of

record.

/s/

Ivan D. Davis
United States Magistrate Judge

March 9, 2011
Alexandria, Virginia