**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

STEPHANIE R. HOLMES,                )
       Plaintiff,                )
                   )
       v.                        )     **Case No. 1:10cv75**
                   )
WAL-MART STORES EAST, L.P.,          )
       Defendant.                )

F I L E D

APR 2 7 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

    At issue on the parties' 28 U.S.C. § 636(b)(1) objections to the Magistrate Judge's Report

and Recommendation ("R&R") is: (1) whether the Magistrate Judge correctly concluded that

plaintiff's claim for compensatory damages for pain and suffering should be stricken as a

sanction for "fraud on the court"[1]; and (2) whether the Magistrate Judge correctly rejected

defendant's argument that plaintiff's claim for reinstatement and lost wages (*i.e.*, back pay)

should be dismissed because plaintiff voluntarily resigned from her employment.

### I.

    The facts and procedural history of this matter, which are fully recounted in the

Magistrate Judge's thorough R&R, are briefly restated here. Plaintiff, Stephanie Holmes, is a

resident of Maryland who was previously employed at a Walmart store located in Alexandria,

Virginia. Defendant, Walmart Stores East, L.P. ("Walmart"), is a Delaware partnership that

owns the Walmart store where Holmes worked.

---

[1] *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (defining the phrase "fraud on the court" as a basis for a discovery sanction of dismissal).

This action was originally commenced by the Equal Employment Opportunity Commission ("EEOC"), on behalf of Holmes, on January 27, 2010.[2] The EEOC's complaint alleged that Walmart violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112(a), (b)(5)(A), by failing to provide the charging party, Holmes, with a reasonable accommodation for her known disability. Specifically, the EEOC's complaint alleged that Holmes, who is hearing impaired, was employed as a stocker from November 2002 to December 2006,[3] and that Walmart refused to provide Holmes with an interpreter and comprehensive notes of meeting and instructions, which were necessary for Holmes to perform the essential functions of her position. In its prayer for relief, the EEOC requested, *inter alia*, injunctive relief, compensation for past and future pecuniary losses, compensation for past and future non-pecuniary losses, and punitive damages.

Walmart served its First Requests for Admissions, First Set of Interrogatories to Plaintiff, and First Request for Production of Documents on the EEOC on May 17, 2010. Because the EEOC's complaint requested compensatory damages for Holmes's non-pecuniary losses, including, *inter alia*, emotional pain, suffering, inconvenience, and humiliation, Walmart sought discovery of Holmes's medical history, including information on whether Holmes had received treatment from a mental health provider in connection with her employment at Walmart. Walmart also requested the production of: (1) any diaries or journals authored by Holmes containing information relevant to the issues raised in the complaint; (2) all communications

---

[2] *See* 42 U.S.C. § 12117(a) (incorporating the provision of Title VII, 42 U.S.C. § 2000e-5(f)(1), allowing the EEOC to file civil suits on behalf of victims of discrimination).

[3] Holmes worked as a seasonal stocker from November 19, 2002 until January 6, 2003. 01/27/10 Compl. ¶ 10. She was hired as a full-time employee on March 14, 2003. *Id.* ¶ 11. Holmes was terminated for allegedly failing to follow instructions on June 8, 2006, but she was reinstated in early July 2006 and continued to work as a full-time Walmart employee until she voluntarily resigned in December 2006. *Id.* ¶ 13.

between Holmes and Walmart's employees; and (3) emails containing information relevant to issues raised in the complaint.

The EEOC provided responses to Walmart's discovery requests on June 18, 2010. The EEOC responded to Walmart's Request for Admission ("RFA") No. 6 by stating that "Holmes has not visited a doctor, physician, psychiatrist, psychologist or any other health care provider as a result of or in connection with any [sic] the allegations raised in the Complaint." *See* Def.'s Mot. to Strike (Doc. No. 25), Ex. 1. The EEOC objected to Walmart's Interrogatory No. 11, which requested information on Holmes's medical history, claiming that the lawsuit had not placed Holmes's medical history at issue. *See* Def.'s Mot. to Strike (Doc. No. 25), Ex. 2. Finally, in response to Walmart's request for production of documents, the EEOC stated that it would produce all responsive, non-privileged documents in its possession. *See* Def.'s Mot. to Strike (Doc. No. 25), Ex. 3.

Holmes was deposed for the first time on June 29, 2010. During Holmes's first deposition, Walmart attempted to confirm that Holmes had not received treatment from a mental health provider on account of emotional distress caused by her employment at Walmart. In response to this line of questioning, Holmes provided false testimony. At first, Holmes stated that she never received treatment from a mental health professional: "First of all, I don't need therapy, and I don't see doctors." 06/29/10 Tr. 71:18-21. This was false. She then testified that she saw a therapist "just once" in 2007. *Id.* at 75:8. This, too, was false. A short time later, Holmes changed her story yet again, testifying that she only received treatment from one doctor three times per week from March 2004 to February 2005. This was also false. By the end of her deposition, Holmes had admitted that she had received therapy for anxiety and depression over the course of a thirteen-year period from 1994 to 2007, and that some of her treatment related to

issues involving her employment at Walmart. *Id.* at 80:15-22. This was contrary to her previous testimony and the EEOC's discovery responses.

Following Holmes's first deposition, Walmart filed a motion to strike the EEOC's claim for compensatory damages for pain and suffering as a sanction for Holmes's false discovery responses (served through the EEOC), and for Holmes's repeated misrepresentations about her medical history during her deposition. *See* Def.'s Motion to Strike Plaintiff's Claim for Compensatory Damages as a Sanction for Ms. Holmes' Fraud (Doc. No. 24).

Holmes was deposed for a second time on July 14, 2010. During her second deposition, Holmes admitted that she had failed to produce requested relevant documents, including: (1) a journal and diary; (2) written communications with Walmart's employees; and (3) emails. After her second deposition, Walmart filed a motion to dismiss the entire suit as a sanction for Holmes's fraud. *See* Defendant's Motion to Dismiss as a Sanction for Ms. Holmes' Fraud (Doc. No. 27). Both of Walmart's motions were referred to the Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. *See EEOC v. Walmart Stores East, L.P.*, No. 1:10cv75 (E.D. Va. Jul. 15, 2010) (Order) (Doc. No. 34).

Prior to a hearing on these motions, the EEOC filed a motion to withdraw as a party plaintiff. *See* Unopposed Motion to Dismiss Plaintiff Equal Employment Opportunity Commission as a Party Plaintiff (Doc. No. 35). The EEOC's motion was granted, and Holmes was given thirty days to file a motion to intervene. *See EEOC v. Walmart Stores East, L.P.*, No. 1:10cv75 (E.D. Va. Jul. 23, 2010) (Order) (Doc. No. 36). Holmes filed a motion to intervene as of right, pursuant to 42 U.S.C. § 2000e-5(f)(1) and Rule 24(a), Fed. R. Civ. P., on August 20, 2010. *See* Motion to Intervene of Stephanie R. Holmes (Doc. No. 39). Holmes's motion to intervene stated the grounds for intervention and was accompanied by a complaint-in-

intervention setting forth the claims for which intervention was sought. Holmes's complaint-in-intervention is virtually identical to the EEOC's complaint with the exception that Holmes's complaint-in-intervention includes claims for reinstatement and back pay. 8/20/10 Compl. The motion to intervene was granted. *See EEOC v. Walmart Stores East, L.P.*, No. 1:10cv75 (E.D. Va. Aug. 24, 2010) (Order) (Doc. No. 43).

Thereafter, Walmart filed a motion to dismiss and a motion for summary judgment on Holmes's claims for reinstatement and back pay. *See* Motion to Dismiss Plaintiff's Claim for Lost Wages and Reinstatement (Doc. No. 47) and Motion for Summary Judgment on Plaintiff's Claim for Lost Wages and Reinstatement (Doc. No. 48). Specifically, Walmart argued that Holmes cannot obtain back pay or reinstatement because she voluntarily resigned from her employment with Walmart. Walmart further argued that even if Holmes can obtain lost wages or reinstatement, her claims are untimely and should be dismissed. These motions were also referred to the Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for a report and recommendation. *See Holmes v. Walmart Stores East, L.P.*, No. 1:10cv75 (E.D. Va. Oct. 8, 2010) (Order) (Doc. No. 63).

The Magistrate Judge conducted a three-day evidentiary hearing. The evidentiary hearing began on November 17, 2010 and continued for two more days on December 2, 2010 and December 17, 2010. During the hearing, both sides presented evidence pertaining to Holmes's communications with the EEOC, the EEOC's discovery responses, Holmes's deposition testimony, and Holmes's conduct following her deposition. Following the hearing, both parties filed supplemental briefs highlighting the portions of the evidentiary hearing transcript they contended supported their positions.

The Magistrate Judge issued an R&R on March 10, 2011, finding that Holmes had committed a "fraud on the court" by making false representations during the course of the discovery process, at her depositions, and also at the evidentiary hearing. R&R at 19. As a sanction, the Magistrate Judge recommended striking Holmes's claim for compensatory damages for pain and suffering, but against dismissing Holmes's complaint in its entirety. R&R at 20. The Magistrate Judge also recommended against dismissing Holmes's claim for reinstatement and back pay, holding that those remedies are not restricted to cases in which a plaintiff was unlawfully terminated. R&R at 23-25.

Both parties filed timely objections to the R&R, pursuant to 28 U.S.C. § 636(b)(1). *See* Plaintiff's Exceptions to March 9, 2011 Magistrate's Report and Recommendation (Doc. No. 82); Defendant's Objection to the Magistrate Judge's March 9, 2011 Report and Recommendation (Doc. No. 83). Holmes asserts numerous objections to the Magistrate Judge's factual conclusions. Her memorandum in essence provides a page-by-page overview of the R&R, raising objections to every sentence, finding, and disposition that might be construed as adverse to her. In general, Holmes objects to the Magistrate Judge's finding that she committed a "fraud on the court" and she further objects to the Magistrate Judge's recommendation that she should be sanctioned by striking her claim for compensatory damages for pain and suffering. For its part, Walmart agrees with the Magistrate Judge's factual findings regarding Holmes's discovery abuses, but argues that the Magistrate Judge incorrectly applied the facts to the governing law by concluding that Holmes's conduct does not warrant dismissal of the entire case. Walmart also argues that the Magistrate Judge incorrectly concluded that the equitable remedies of reinstatement and back pay are available when an alleged victim of discrimination voluntarily resigns from employment.

## II.

The case was referred to the magistrate judge for an R&R on dispositive motions, pursuant to 28 U.S.C. § 636(b)(1)(B). As the parties have filed timely objections, a *de novo* review of those portions of the R&R to which an objection has been made is required. 28 U.S.C. § 636(b)(1). The magistrate judge's findings and recommendations may be accepted, rejected, or modified, in whole or in part. *Id.* Where, as here, a magistrate judge has made credibility determinations, those determinations can be accepted without holding a separate hearing. *See United States v. Raddatz*, 447 U.S. 667, 674 (1980); *Proctor v. State Gov't of North Carolina*, 830 F.2d 514, 518 (4th Cir. 1987).

## III.

The first question is whether Holmes has engaged in sanctionable discovery conduct. After conducting a *de novo* review of the record as a whole, it is clear that the Magistrate Judge correctly concluded that Holmes perpetrated a fraud on the court. The First Circuit has defined "fraud on the court" in the following terms:

> A "fraud on the court" occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

*Aoude*, 892 F.2d at 1118.[4] Like any other type of fraud, a "fraud on the court" must be established by clear and convincing evidence. *See England v. Doyle*, 281 F.2d 304, 309-10 (9th

---

[4] The Eighth Circuit similarly defines "fraud on the court" as "a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense." *Pfizer v. Int'l Rectifier Corp.*, 538 F.2d 180, 195 (8th Cir. 1976).

Cir. 1960); *Suntrust Mortgage, Inc. v. AIG United Gaur. Corp.*, No. 3:09cv529, 2011 WL 1225989, at *20 (E.D. Va. Mar. 29, 2011).

Here, the record evidence shows clearly and convincingly that Holmes was not truthful with the EEOC about her medical history, which resulted in the EEOC's submission of a false discovery admission that Holmes had not received mental health treatment in connection with her employment at Walmart. During the evidentiary hearing, Edward Loughlin, the EEOC trial attorney assigned to Holmes's case, testified that he mailed Holmes a copy of Walmart's discovery requests, that he discussed the discovery requests with her, and that he confirmed with her the accuracy of the EEOC's responses.[5] Although Holmes testified that she told Loughlin and others at the EEOC about her mental health treatment,[6] the EEOC officials assigned to Holmes's case testified that this was not true and that they did not know about her mental health treatment prior to her June 29, 2010 deposition.[7] The Magistrate Judge found the testimony of the EEOC officials to be credible.[8]

---

[5] 11/17/10 Hr'g Tr. 19:11-21:14.

[6] 12/2/10 Hr'g Tr. 56:8-12; 64:11-65:3; 76:24-77:6.

[7] Loughlin testified that he was unaware of Holmes's medical treatment history until Holmes's June 29, 2010 deposition. *See* 11/17/10 Hr'g Tr. 22:11-18. Loughlin's supervisor, Tracy Spicer, testified that she was also unaware of Holmes's mental health treatments until the June 29, 2010 deposition. *See* 12/17/10 Hr'g Tr. 65:5-15. Eugene Reed, the EEOC intake officer assigned to Holmes's case, testified that he did not remember his interview with Holmes. *See* 11/17/10 Hr'g Tr. 127:20-24. Yofi Weinberg, an EEOC investigator who interviewed Holmes, testified that Holmes never told her that Holmes had received mental health treatment in connection with her employment at Walmart. *See* 11/17/10 Hr'g Tr. 142:8-11.

[8] Holmes objects to the Magistrate Judge's finding that she falsely responded to RFA No. 6 on the ground that Walmart's discovery requests were directed at the EEOC and, therefore, the EEOC, not Holmes, is responsible for any false responses. This objection is meritless. The Magistrate Judge found that Holmes lied to the EEOC, which caused the EEOC to submit false discovery responses to Walmart. As explained above, the evidence in the record clearly and convincingly supports the Magistrate Judge's finding.

The record also establishes by clear and convincing evidence that Holmes provided false testimony about her medical history during her June 29, 2010 deposition. In response to questions about her past medical history, Holmes initially testified that she never received any treatment from a mental health provider.[9] Yet, by the end of the deposition, Holmes had admitted that she had received extensive mental health treatment over a thirteen year period from 1994 to 2007, and that some of her treatment related to her employment at Walmart.[10] Moreover, the record shows that despite Walmart's extensive questioning during her deposition, Holmes still failed to provide a full account of her mental health treatment. In a post-deposition declaration, Holmes admitted to receiving mental health treatment during a time period that she failed to mention in her deposition.[11] Even more troubling, at the evidentiary hearing, Holmes testified, for the first time, that she did not receive treatment from only one doctor, but rather that she received treatment from ten to fifteen other therapists and sought care at a psychiatric hospital on two occasions.[12] [13]

Moreover, the record evidence makes clear that Holmes knowingly failed to produce relevant documents during discovery. Holmes testified that she received a copy of Walmart's

---

[9] 6/29/10 Tr. 71:18-21.

[10] 6/29/10 Tr. 80:15-22.

[11] 9/24/10 Decl. ¶¶ 38-39.

[12] 12/2/10 Hr'g Tr. 51:16-18; 12/17/10 Hr'g Tr. 46:6-10; 52:20-22.

[13] Holmes objects to the Magistrate Judge's finding that she made knowing misrepresentations about her mental health treatment, arguing that she was simply trying to protect her medical right to privacy. Even assuming that there is such a right in this circumstance, this objection is meritless. Any fair reading of Holmes's June 29, 2010 deposition does not suggest that she was simply trying to keep her medical history private. To the contrary, the transcript shows that Holmes repeatedly made false statements about the purpose and extent of her mental health treatment.

First Request for Production of Documents, that she read it, and that she understood it was her responsibility to gather relevant documents.[14] Yet, Holmes failed to produce relevant documents that she either had or thought she had in her possession, including (i) her diary and journal, (ii) a box of documents containing communications with Walmart's employees, and (iii) emails discussing her employment at Walmart.[15] Although it is not entirely clear from the record that Holmes intentionally withheld from Walmart the box of documents containing communications with Walmart's employees and the emails discussing her employment with Walmart,[16] it is clear from the record that she intentionally withheld producing her diary and journal because she thought they were private.[17]

Finally, the record evidence makes clear that Holmes made false representations during the evidentiary hearing before the Magistrate Judge. In an effort to explain her numerous false

---

[14] Holmes objects to the Magistrate Judge's finding that she received Walmart's discovery requests. But the evidence in the record is clear that Holmes received, read, and understood Walmart's First Request for Production of Documents. *See* 7/14/10 Tr. (Rough Draft) 38:1-12; 12/17/10 Hr'g Tr. 12:15-13:2.

[15] It is unclear from the record whether Holmes still has her journal and diary. She claims to have searched for both of them after her July 14, 2010 deposition and could not find them. *See* 12/2/10 Hr'g Tr. 61:9-18. Her mother corroborated this testimony, *see* 12/2/10 Hr'g Tr. 19:18-21; 21:5; 36:10-12, and the Magistrate Judge concluded that the mother's testimony was credible. Holmes also testified that she searched for the box of documents containing back-and-forth communications with Walmart and could not find them. *See* 12/2/10 Hr'g Tr. 87:24-88:5. However, Holmes testified that she still has possession of some of the emails relevant to this dispute. *See* 12/17/10 Hr'g 38:17-20.

[16] At her July 14, 2010 deposition, when Holmes was asked why she failed to produce the box of documents with back-and-forth communications with Walmart, she testified that she forgot about one of the documents. *See* 7/14/2010 Tr. (Rough Draft) 38:20-21 ("Just to be honest, I didn't think about it."). She also testified that she thought she had given all the documents to the EEOC investigator. *See* 7/14/2010 Tr. (Rough Draft) 46:13-47:1. When Holmes was asked why she failed to produce the emails, she testified that she simply forgot about them. *See* 7/14/10 Tr. (Rough Draft) 73:13-15 ("Again, I didn't think of it, just to be straight.").

[17] 7/14/10 Tr. (Rough Draft) 55:14-22; 12/17/10 Hr'g Tr. 16:17-23.

statements and discovery abuses, Holmes attempted to shift the blame to the EEOC. For

example, although she testified during her July 14, 2010 deposition that she failed to produce her

diary and journal because they were private,[18] during her cross-examination at the evidentiary

hearing she testified that Loughlin told her not to produce the diary and journal because it would

hurt her case.[19] When asked to provide an explanation for these inconsistent statements, Holmes

simply claimed that the statements were not inconsistent:

> Q:  My question is, I want you to explain to the Court how it is or
> why it is that you testified truthfully that you made the decision on
> you own, without the involvement of any EEOC lawyer or
> anybody from the EEOC, not to produce your diary or personal
> journal because you believed it was private.  How do you explain
> that, in light of your testimony a second ago that you are claiming
> the EEOC told you not to produce it?  Those two statements are
> inconsistent.  Please explain that.
>
> A:  They are both true.[20]

Similarly, she tried to convince the Magistrate Judge that she did not tell Walmart about her

medical records during the June 29, 2010 deposition because Loughlin told her not to mention

the records because it would hurt her case:

> Q:  Yet in your deposition, you told me you didn't have any
> records, right?
>
> A:  Yes, that's correct, because Mr. Loughlin told me that I was
> not to speak of that because that would hurt our case, and so I was
> supposed to not make any mention of that at all.  So, I was abiding
> by my former lawyer's wishes.

12/17/10 Hr'g Tr. 54:20-55:3.  After observing the demeanor of all the witnesses in this case,

including the EEOC officials and Holmes, the Magistrate Judge determined that Holmes testified

---

[18] 7/14/10 Tr. (Rough Draft) 55:14-22.

[19] 12/17/2010 Hr'g Tr. 18:12-13.

[20] 12/17/2010 Hr'g Tr. 20:3-14.

falsely when she stated that Loughlin told her not to produce the diary and journal, and when she stated that Loughlin told her not to mention her medical records during her deposition.

In sum, the record evidence clearly and convincingly establishes that Holmes has engaged in a pattern of misconduct in this litigation that includes, (i) making false statements to the EEOC that resulted in the EEOC providing false discovery responses to Walmart, (ii) providing false testimony during depositions, (iii) intentionally failing to produce relevant documents, and (iv) providing false testimony at the evidentiary hearing. As the Magistrate Judge correctly concluded, Holmes's conduct clearly and convincingly reflects an intentional scheme to hinder Walmart's access to relevant evidence and to prevent the fair adjudication of her claims. Accordingly, Holmes's conduct falls squarely within the definition of "fraud on the court"[21] and is a clear abuse of the judicial process.[22] An appropriate sanction is unquestionably warranted.[23]

---

[21] *See, e.g., Nichols v. Klein Tools*, 949 F.2d 1047, 1048-49 (8th Cir. 1991) (imposing sanctions for "fraud on the court" where plaintiff concealed a material fact); *Yanez v. America West Airlines*, 2004 U.S. Dist. LEXIS 20706, at *19 (D. Md. Oct. 13, 2004) (holding that plaintiff perpetrated a "fraud on the court" by providing intentionally false deposition testimony and deliberately failing to meet discovery obligations to hide evidence of obvious high relevance to his claim for damages).

[22] A federal court has the inherent authority to impose sanctions for fraud on the court *or* abuse of the litigation process. *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993) ("[W]e recognize here that when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action."); *Suntrust*, 2011 WL 1225989, at *13 ("By now it is well-settled that fraud on the court or abuse of the judicial process warrants use of the inherent power to impose sanctions on the offending party or its counsel, or both."). Thus, even if Holmes's conduct is not a "fraud on the court," there is no question that Holmes's conduct constitutes a serious abuse of the litigation process.

[23] To the extent that Holmes argues that she cannot be sanctioned because she was not the plaintiff in the original action, her argument is unpersuasive. The inherent authority of a court to impose sanctions for bad-faith conduct reaches the charging party—here Holmes—in an action brought by the EEOC. *Cf. Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Were the rule otherwise, a charging party would have a powerful incentive to commit fraud, for in that event, a

The next step in the analysis is to determine the appropriate sanction for Holmes's conduct. On this issue, the Magistrate Judge correctly concluded that the appropriate sanction is to strike Holmes's claim for compensatory damages for pain and suffering, but not to dismiss her complaint in its entirety. While a federal court's inherent power to sanction includes the power to dismiss a case in its entirety, the Fourth Circuit has emphasized that courts must exercise this authority with restraint. *See Shaffer*, 11 F.3d at 462. Thus, in the Fourth Circuit, before a court can dismiss a case for "fraud on the court" or abuse of the litigation process, the following six factors must be considered: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest. *Id*.

Here, the record evidence clearly and convincingly demonstrates that Holmes, alone, is culpable for her discovery abuses, including her repeated misrepresentations about her medical history. The Magistrate Judge correctly rejected as false Holmes's contention that EEOC lawyers told her to conceal evidence. Moreover, the record also reflects that Holmes's conduct has hindered the fair adjudication of her claims and prevented Walmart from adequately preparing its defense, particularly its defense against her claim for compensatory damages for pain and suffering.[24] Yet, dismissing the case in its entirety is not appropriate because striking

---

charging party could engage in discovery fraud with impunity and if successful the charging party would obtain an unfair advantage in the litigation. If, on the other hand, the fraud is discovered, the EEOC's action might be dismissed or the EEOC might withdraw, as occurred here, but the charging party would then be free to intervene in the action without any consequences.

[24] Walmart objects—unpersuasively—to the Magistrate Judge's finding the Walmart will suffer no substantial prejudice if required to litigate Holmes's substantive failure-to-accommodate

Holmes's claim for compensatory damages is sufficient to (i) punish Holmes for her bad-faith conduct, (ii) compensate Walmart, and (iii) deter similar conduct by Holmes in the future.[25] No lesser sanction is warranted on this record. To conclude otherwise ignores the seriousness of the conduct and fails to vindicate the integrity of the judicial process. The partial dismissal ordered here must stand as a beacon to warn and deter others from engaging in similar conduct.

## IV.

Walmart argues that Holmes is not entitled to the equitable remedies of back pay and reinstatement because she voluntarily resigned from her employment at Walmart. The Magistrate Judge rejected Walmart's argument because the ADA incorporates the equitable remedies in 42 U.S.C. § 2000e-5(g)(1), which include reinstatement and back pay, and nothing in the statute limits equitable relief to cases of unlawful termination. The Magistrate Judge found support for this conclusion in *Wells v. North Carolina Bd. of Alcoholic Control*, 714 F.2d 340, 342 (4th Cir. 1983), which held that a plaintiff who was discriminatorily denied promotion was permitted to recover back pay even though the plaintiff voluntarily resigned from employment. Walmart timely objected to the Magistrate Judge's conclusion.

---

claim without the benefit of the diary/journal, communications with Walmart's employees, and some of the emails. The record discloses very little about the content and substance of these documents, and in the end, the record is simply unclear on whether the absence of these documents would cause genuine prejudice to Walmart.

[25] Walmart also objects to the Magistrate Judge's finding that a lesser sanction than outright dismissal is appropriate here. Walmart argues that Holmes has proven to be untrustworthy and hence outright dismissal is the only sanction that will uphold the sanctity of the judicial process, punish Holmes, and ensure Walmart's right to a fair trial. Walmart's argument is unpersuasive because the majority of Holmes's fraud was directed at concealing her mental health treatments. Thus, a sanction that prohibits Holmes from pursuing her claim for compensatory damages for pain and suffering is narrowly and appropriately tailored to punish Holmes for her fraud and to prevent unfair prejudice to Walmart. *See Shaffer*, 11 F.3d at 461 ("Because the inherent power is not regulated by Congress or the people and is particularly subject to abuse, it must be exercised with the greatest restraint and caution, and then only to the extent necessary.").

Analysis of this issue appropriately begins with the observation that Walmart's

argument—namely, that a victim of discrimination is not entitled to back pay if the plaintiff

voluntarily resigned from employment—does not accurately state the law in the Fourth Circuit.

Walmart supports its argument by correctly noting that the prevailing view in a majority of

jurisdictions is that back pay and reinstatement are not available to a plaintiff who voluntarily

resigns absent a showing of constructive discharge.[26] The oft-cited rationale for this rule is that

"society and the policies underlying Title VII will be best served if, wherever possible, unlawful

discrimination is attacked within the context of existing employment relationships." *Equal

Employment Opportunity Comm'n v. L.B. Foster Co.*, 123 F.3d 746, 755 (3d Cir. 1997) (internal

quotation marks and citations omitted). Walmart's briefs are noticeably silent, however, on

whether the Fourth Circuit has adopted the constructive discharge rule. A review of Fourth

Circuit case law provides a ready explanation for Walmart's decision to cite out-of-circuit

authority rather than Fourth Circuit precedent: in contrast to the majority of circuits, the Fourth

Circuit has expressly rejected the constructive discharge rule. *See Dennis v. Columbia Colleton

Med. Ctr. Inc.*, 290 F.3d 639, 651 (4th Cir. 2002).

In *Dennis*—the Fourth Circuit's most recent opinion dealing with the constructive

discharge rule—the plaintiff resigned from her job after she was denied a promotion. At trial,

---

[26] *See Hertzberg v. SRAM Corp.*, 261 F.3d 651, 659 (7th Cir. 2001) ("A victim of discrimination that leaves his or her employment as a result of the discrimination must show either an actual or constructive discharge in order to receive the equitable remedy of reinstatement, or back and front pay in lieu of reinstatement."); *Jurgens v. Equal Employment Opportunity Comm'n*, 903 F.2d 386, 389 (5th Cir. 1990) ("[I]n order for an employee to recover back pay for lost wages beyond the date of his retirement or resignation, the evidence must establish that the employer constructively discharged the employee."); *Maney v. Brinkley Mun. Waterworks and Sewer Dep't*, 802 F.2d 1073, 1075 (8th Cir. 1986) ("As a general rule, employees are entitled to awards such as back pay and reinstatement only if they were actually or constructively discharged from their employment."); *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 342 (10th Cir. 1986) ("[T]he remedies of back pay and reinstatement are not available to [plaintiff] unless she was constructively discharged.").

she succeeded in proving gender discrimination and was awarded back pay. On appeal, the

defendant argued that the plaintiff was not entitled to back pay because the plaintiff voluntarily

quit her job immediately after being denied promotion. The Fourth Circuit rejected the

defendant's argument, holding that:

> [T]he Fourth Circuit does not apply the "constructive discharge rule" denying such pay to persons who leave an employer who has committed intentional discrimination unless it is under conditions of a constructive discharge. . . . Instead, we simply apply the general statutory duty located at 42 U.S.C. § 2000e-5(g) to mitigate employer damages.

*Id.* at 651. The rule announced in *Dennis* is consistent with earlier Fourth Circuit opinions that

allowed plaintiffs to recover back pay for periods beyond their voluntary resignation.[27] Thus, the

fact that Holmes alleges in her complaint that she voluntarily resigned from Walmart does not—

as Walmart would have it—necessarily foreclose her entitlement to the equitable remedy of back

pay.

Back pay and reinstatement are both equitable remedies. *See, e.g.*, *Egbuna v. Time-Life*

*Libraries, Inc.*, 153 F.3d 184, 186 (4th Cir. 1998). The purpose of these remedies is "to make

persons whole for injuries suffered on account of unlawful employment discrimination."

*Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). Given this purpose, it is well-settled

that back pay is an appropriate remedy where discrimination causes a loss of pay,[28] and

reinstatement is warranted where discrimination causes unlawful termination.[29]

---

[27] *See Wells*, 714 F.2d at 342 (failure to promote); *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1114 (4th Cir. 1981) (discriminatory demotion).

[28] *See Dennis*, 290 F.3d at 651 (awarding back pay where plaintiff was discriminatorily denied a promotion); *Paroline v. Unisys Corp.*, 879 F.2d 100, 113 (4th Cir. 1989) (noting that plaintiff was entitled to recover back pay if successful on her constructive discharge claim) (Wilkinson, J., dissenting in part), *vacated in part*, 900 F.2d 27 (4th Cir. 1990) (en banc) (adopting panel dissenting opinion); *see also Hare v. Potter*, 549 F. Supp. 2d 688, 692 (E.D. Pa. 2007) ("Back pay is appropriate where the plaintiff establishes 'the discrimination was found to have some

- 16 -

Based on this understanding of back pay and reinstatement, it is clear that not every failure-to-accommodate claim gives rise to a claim for back pay and reinstatement. Similar to a situation where an employer creates a hostile work environment, an employer's failure to accommodate may simply make working conditions more difficult and not result in lost pay or discharge. Under those circumstances, an employer's failure to accommodate does not entitle a plaintiff to back pay and reinstatement. *See Johnson*, 991 F.2d at 130 n.\*. Since lost pay and discharge are not at issue, back pay and reinstatement would not make a plaintiff whole.[30]

---

concrete effect on the plaintiff's employment status, such as a denied promotion, a differential in compensation, or termination.'" (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 254 (1994))); Larson, *Employment Discrimination* § 158.02 (Lexis 2011) ("Back pay is a money award intended to make a plaintiff whole for decreased earnings suffered because of an employer's discriminatory behavior.").

[29] *See Johnson v. Shalala*, 991 F.2d 126, 130 n.\* (4th Cir. 1993) (Wilkinson, J.) ("[T]he specific remedies of back pay and reinstatement are dependent upon proof of some adverse action taken by the employer, provided here by the constructive discharge."); *Von Gunten v. Maryland Dep't of Env't*, 68 F. Supp. 2d 654, 662 (D. Md. 1999) (granting summary judgment on plaintiff's constructive discharge claim and holding that plaintiff was not entitled to seek reinstatement based on her voluntary termination of her employment); Larson, *Employment Discrimination* § 158.02 (Lexis 2011) ("Once discriminatory termination has been established a court may, among other things, order the employer to reinstate the employee to his or her former position."). In *Spagnuolo*, the Fourth Circuit upheld the district court's decision to award reinstatement to a plaintiff who was subject to age discrimination and voluntarily quit his employment. 641 F.2d at 1114-15. In that case, the Fourth Circuit rejected the argument that reinstatement was inappropriate because the plaintiff was unqualified for the new position and because of lingering animosity between the parties. And consistent with the principle that remedies should make discrimination victims whole, the Fourth Circuit allowed reinstatement to achieve this goal. Notably, however, the Fourth Circuit did not address the question whether back pay is available to a plaintiff who does not allege and prove discriminatory discharge. Thus, *Spagnuolo* is not persuasive on the issue of whether a plaintiff can obtain reinstatement if the discrimination does not cause discharge.

[30] It is well-settled that a hostile work environment claim, alone, is not sufficient to warrant back pay and reinstatement because a hostile work environment does not cause loss of pay or discharge, and hence back pay and reinstatement would not make a plaintiff whole. *See Spencer v. Walmart Stores, Inc.*, 469 F.3d 311, 317 (3d Cir. 2006) ("Put simply, if a hostile work environment does not rise to the level where one is forced to abandon the job, loss of pay is not an issue."); *Caviness v. Nucor-Yamato Steel Co.*, 105 F.3d 1216, 1219 (8th Cir. 1997) ("But in

- 17 -

Support for this conclusion is found in the Fourth Circuit's opinion in *Johnson v. Shalala*, 991 F.2d 126 (4th Cir. 1993). There, the plaintiff was awarded reinstatement and back pay after the district court found that the defendant, a government agency, had failed to accommodate plaintiff's disability[31] and had constructively discharged plaintiff by failing to act in the face of known intolerable conditions. On appeal, the Fourth Circuit concluded that the government had tried and failed to accommodate plaintiff's disability, but it further concluded that the facts did not support a claim for constructive discharge. *Id.* at 132. As a result, the Fourth Circuit reversed the district court's judgment because the remedies of reinstatement and back pay were dependent on plaintiff's constructive discharge claim. *Id.* at 130 n.* Were a mere failure to accommodate sufficient to allow a plaintiff to recover back pay and reinstatement, the Fourth Circuit would not have reversed judgment in *Shalala*. To the contrary, the fact that the government had failed to accommodate the plaintiff's disability would have been sufficient to support the judgment regardless of whether there was also a constructive discharge. Thus, the fact that the Fourth Circuit reversed the district court's judgment suggests that, like hostile work environment claims, failure-to-accommodate claims do not entitle a plaintiff to recover back pay and reinstatement unless the failure to accommodate causes a loss of pay or discharge.

Here, Holmes is not entitled to recover back pay and reinstatement because the complaint does not allege that Walmart's failure to accommodate her disability caused a loss of pay or discharge. To the contrary, Holmes alleges that she worked for Walmart as a stocker for almost four years and that Walmart failed to provide her with an interpreter and comprehensive notes of

---

the absence of constructive discharge, a plaintiff subjected to sexual harassment, no matter how egregious, is not 'made whole' by the equitable remedy of backpay.").

[31] In *Shalala*, the failure-to-accommodate claim was brought under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* The Rehabilitation Act, like the ADA, incorporates the equitable remedies in Title VII. *See* 29 U.S.C. § 794a(a)(1); *See Szedlock v. Tenet*, 139 F. Supp. 2d 725, 732 n.14 (E.D. Va. 2001).

meetings and instructions, which made her job more difficult. Based on these allegations, the purpose of Title VII's equitable remedies would not be served by allowing Holmes to obtain back pay and reinstatement because those remedies would not make her whole. *See Albemarle Paper Co.*, 422 U.S. at 418.

Holmes attempts to preserve her right to back pay by arguing that the allegations in her complaint are sufficient to state a claim for discriminatory failure to promote. Specifically, Holmes argues that her complaint includes a failure-to-promote claim because the charge sheet she filed with the EEOC contains allegations that she was denied promotion opportunities because of her disability, and her complaint references the EEOC charge sheet. Plaintiff's argument reflects a misunderstanding of the rule that a court may consider documents referenced in the complaint on a motion to dismiss without converting the motion into one for summary judgment.[32] Under this rule, a *defendant* may attach a document referred to in the plaintiff's complaint to a motion to dismiss without converting the motion into one for summary judgment. But the rule does not permit a *plaintiff* who fails to allege a claim to submit a document referenced in the complaint to bolster the complaint's allegations. And, in any event, the rule does not apply because the EEOC charge sheet was not integral to or relied upon in Holmes's complaint.[33] Because the EEOC charge sheet cannot augment the allegations in Holmes's complaint, Holmes has not alleged that Walmart's failure to provide a reasonable accommodation caused her to lose promotion opportunities.

---

[32] *See, e.g., Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (holding that "when a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.") (internal quotation marks and citations omitted).

[33] *Id.*

Holmes also argues, unpersuasively, that the allegations in her complaint are sufficient to state a claim for constructive discharge. In the Fourth Circuit, an employee is constructively discharged "if an employer deliberately makes the working conditions of the employee intolerable in an effort to induce the employee to quit." *Whitten v. Fred's Inc.*, 601 F.2d 231, 248 (4th Cir. 2010) (quoting *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353-54 (4th Cir. 1995)).[34] Nowhere does Holmes's complaint allege that her working conditions were objectively intolerable or that Walmart deliberately made an effort to induce her to quit,[35] and plaintiff's argument that these allegations can be inferred from the allegations in the complaint is unpersuasive. Thus, Holmes has not alleged that she is entitled to back pay and reinstatement because Walmart's failure to accommodate her disability caused her constructive discharge.

Accordingly, Holmes's complaint does not adequately allege a basis for obtaining back pay and reinstatement, and her complaint is appropriately dismissed to the extent that she requests those remedies. However, the case will be remanded to the Magistrate Judge to determine if Holmes should be allowed to amend her complaint, pursuant to Rule 15(a)(2). If Holmes amends her complaint to include allegations of discriminatory failure to promote or constructive discharge, she may be entitled to back pay and reinstatement.

---

[34] The Fourth Circuit has already noted that the requirement that a plaintiff prove that an employer *intended* to force the plaintiff to quit is arguably in tension with the Supreme Court's decision in *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004), where the Supreme Court held that a constructive discharge plaintiff must prove that working conditions were "so intolerable that a reasonable person would have felt compelled to resign." *See Whitten*, 601 F.3d at 249 n.8. Yet, the Fourth Circuit continues to require a plaintiff to prove intent. *Id.*

[35] It is true that the Fourth Circuit's standard for constructive discharge is more demanding than the standard in most other circuits, as the Fourth Circuit requires a plaintiff to establish that an employer created intolerable conditions *with the intent to cause the employee to resign*. *See Poland v. Chertoff*, 494 F.3d 1174, 1185 n.7 (9th Cir. 2007) (identifying circuit split on requirements for constructive discharge). But it should be noted that an employer's failure to accommodate may satisfy the intent requirement where the employer completely fails to accommodate an employee's disability in the face of known intolerable conditions. *See Shalala*, 991 F.2d at 132. Based on the allegations in Holmes's complaint, that is not the case here.

## V.

As an additional sanction, Walmart requests that it be awarded reasonable costs and attorney's fees associated with preparing and filing its Motion to Strike and Motion to Dismiss and attending the three-day evidentiary hearing. A court has the inherent authority to award attorneys' fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45-46. And, although the record evidence makes clear that Holmes acted in bad-faith during the discovery process, an award of attorney's fees is not appropriate in this case because Holmes has already been appropriately punished for her fraud by losing the right to pursue her claim for compensatory damages for pain and suffering. Moreover, it does not appear that Holmes has the financial means to pay an award of attorney's fees, and permitting such an award would likely prohibit Holmes from pursuing her failure-to-accommodate claim.

An appropriate Order will issue.

Alexandria, Virginia
April 27, 2011

/s/

T. S. Ellis, III
United States District Judge